# Commonwealth ex rel. *v.* Garard, Appellant.

*Public officers—County treasurers—Mingling of road funds with general funds—Treasurer not liable for acts of former incumbents.*

1. Where road funds collected by virtue of the acts of June 26, 1895, P. L. 336, and May 11, 1909, P. L. 506, have been mingled with general county funds in such a way that the road funds cannot be separated or distinguished, and this has continued during a period of nine years through the administration of three successive boards of county commissioners, three county treasurers and three boards of county auditors, and all accounts have been duly settled, a succeeding county treasurer who had no part in such mingling of funds cannot be held liable for their misappropriation.

2. In such a case it is proper for the treasurer to pay warrants issued by the county commissioners for general purposes, out of any funds in his hands, although such funds in the aggregate may be in excess of the several road funds previously misappropriated.

Argued Oct. 6, 1914. Appeal, No. 66, April T., 1915, by defendant, from order of C. P. Greene Co., March T., 1914, No. 152, awarding writ of mandamus in case of Commonwealth ex rel. T. J. Ross and Lisbon Scott, Commissioners of the County of Greene and State of Pennsylvania, v. M. E. Garard, Treasurer of Greene County. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Petition for mandamus.

RUPPEL, P. J., specially presiding, filed the following opinion:

On February 14, 1914, the commissioners of Greene county presented a petition to the court of common pleas setting forth that they had issued an order to James L. Iams, as clerk of the commissioners; the order was drawn on M. E. Garard, treasurer of the county, and that said treasurer refused to pay said order although he had in his hands as treasurer at the time $48,216, and asking for a writ of alternative mandamus, etc. On February 20, 1914, the treasurer filed a return to the alternative writ in which he admits that he has in his hands the sum of $48,216, but denies that the money is applicable to the payment of the order in question, and avers that it is held as a road fund under the act of June 26, 1895, and its supplements. A replication and rejoinder having been filed, the case was fully argued by counsel, and from the papers and admissions or statements of counsel, the following facts appear:

The Act of June 26, 1895, P. L. 336 provides, sec. 1, "The several counties of this commonwealth shall have the power and they are hereby authorized, whenever the commissioners or a majority of them shall, by resolution duly adopted, deem it expedient so to do, and upon approval thereof by a grand jury and by the court of quarter sessions as hereinafter provided, to cause any particular main or public road or highway or section thereof in such county to be improved under the provisions of this act."

The second section provides for surveys, estimate of cost and expense, etc., and the obtaining of the approval of the grand jury and the court of quarter sessions.

Section 14 authorizes the commissioners to levy and collect an annual tax not exceeding two mills upon the dollar upon all real and personal property in the county for the purposes mentioned in the act.

The Act of April 22, 1905, P. L. 295, is an amendment

to the act of 1895, particularly authorizing the commissioners to originally locate, lay out and establish new roads, etc., but it makes no change in the act of 1895 bearing upon the merits of this case.

During the argument some stress was placed upon the Act of May 11, 1909, P. L. 506, but I think that act has no bearing upon the questions involved in this case. That seems to be intended to apply to bridges, tunnels or highways within or connecting cities, boroughs and townships. At any rate, it does not introduce any change in the act of 1895 as applicable to the questions under consideration in this case.

Pursuant to these acts of assembly, the commissioners levied an annual tax of one-half mill on the dollar for the years 1905 to 1909, inclusive, and one mill for the year 1910, and realized from this assessment the following sums: For 1905, $12,022.75; 1906, $12,022.58; 1907, $16,871.23; 1908, $16,886.98; 1909, $16,917.87, and in 1910, $40,240.75, total, $114,962.16.

On January 31, 1910, the county commissioners adopted the following resolution: "Resolved, that the county commissioners petition the court under the Acts of Assembly of 1895 and 1909, for the construction of improved county roads as follows:" Describing two roads each of three miles in length, "and that an engineer be employed to make the necessary surveys and estimates," etc.

On February 5, 1910, the commissioners employed a civil engineer who prepared maps, plans, etc., and on February 14, 1910, the commissioners presented their petition to court asking for the approval of the court and grand jury as required by the act of assembly. The court directed advertisement to be made as required by the second section of the act of 1895; and thereafter at March sessions, 1910, the matter was laid before the grand jury, but disapproved by the grand jury. No further action was taken by the commissioners, court or grand jury. The county auditors audited the ac-

counts of the county commissioners, county treasurer and other county officers in each of the years 1906 to 1913, inclusive, for the preceding years, and the road fund raised by the special assessment or levied under the act of 1895, was treated as part of the general fund of the county with no particular designation as road fund or other special fund. But the county auditors in auditing the accounts early in the year 1914 made a request of the county commissioners as follows:

"For purpose of classification of balance in hands of county treasurer, report as follows:

"1. Amount of taxes levied by county commissioners for road purposes, in years 1905 to 1913, inclusive.

"2. Amount of expenditures made during years 1905 to 1913, inclusive, properly chargeable to the road fund.

"3. Commissioners to report expenditures for 1913, so classified as to show whether allowance is claimed for such expenditures as against the general fund or the road fund."

And in their report filed April 4, 1914, they submit a statement as follows:

"Road Fund

"On reference to the several auditors' reports for the years 1905–1912, inclusive, we find that road taxes were levied by the county commissioners, and collected for the years 1905 to 1910, inclusive, under the provisions of the Acts of Assembly of June 26, 1895, P. L. 336, and May 11, 1909, P. L. 506, and their supplements, and the same so reported and set out in the auditors' reports for said years, respectively, as follows:" Then follows a statement of the taxes levied each year with exonerations and expenses of engineer, etc.

"On reference to the auditors' reports for the years 1905 to 1912, inclusive, we do not find that road funds and general funds were ever set out separately and balances struck, but the treasurer in each case charged generally with all funds remaining in his hands at the

close of the fiscal year, irrespective of its origin. We deem it best that funds in the hands of the treasurer be properly classified and have therefore set the same out as follows:

Total road funds......................$114,962.16
Expenditures chargeable to same.............135.21

Balance road fund...................$114,826.95."

Then follows the statement of the settlement with the county treasurer for the year 1913, closing with this statement:

"Balance in hands of M. E. Garard, Treasurer, on First Monday of January, 1914:
General fund (road funds, etc.)...........$61,144.44
Dog tax (sheep fund, etc)...................1,683.71

Total............................$62,828.15
Balance road funds—unexpended.........$114,826.95
Road and general funds in treasurer's hands
First Monday of January, 1914...........$61,144.44

Due from county to road fund Jan. 5, 1914..$53,682.51

"We find and therefore report herewith that there have been expended by the county for current expenses the sum of $53,682.51 out of the road funds levied and collected under the provisions of the County Roads Act of 1895 and 1909 and their supplements. There does not seem to have been any disposition on the part of the county commissioners or county treasurer to misappropriate any of these funds. Besides, it is not possible to determine to what extent this use of these funds is chargeable to those officials whose accounts are now under examination. The period covered by the levy of this tax and the application of these funds, embraces all or part of the terms of office of the present and two former treasurers and boards of county commissioners.

"We therefore believe, and so report, that under the circumstances the application of these funds in the

manner above described is to be treated as a borrowing from road funds to this extent, and temporary application of these funds to the current expenses of the county. The acts of assembly under which this tax was levied clearly set forth and limit the use to which funds so levied and collected may be applied. Its use for any other purpose than those named in the acts is distinctly forbidden.

"We therefore find and report herewith that there have been levied and collected under said acts of 1895 and 1909 and their supplements, road taxes to the amount of $114,962.16, and there have been expended of these funds the sum of $135.21, leaving an unexpended balance of road funds of $114,826.95.

"There have passed through the hands of the treasurer during the year (and he probably held at one time) more than sufficient funds to replace all of said funds. All the expenditures allowed in the report herewith submitted are considered right and proper, and are allowed only on the foregoing theory that the application of this fund to general expenses is to be treated as a temporary borrowing from the road fund for the use of the general fund, though we do not commend such a cause.

"We therefore find that all the balance in the hands of the treasurer on January 5, 1914, of $61,144.44, is road funds and also that at that time the county owed the road fund the further sums of $53,682.51, on account of road funds borrowed temporarily from the road fund and utilized for general expenses.

"This auditors' report had not been filed when these proceedings were begun; however the time for appeal has now elapsed; but the county treasurer, acting upon the belief that this report is binding upon him, refused to honor the order of the county commissioners, claiming that by virtue of this auditors' report the fund in his hands is to be treated simply as road funds, and therefore not applicable to the general in-

debtedness of the county and not available for payment of the order which is the foundation of this suit. The county commissioners in their replication take two positions: First, that the levy and collection. of the takes known as road funds were illegal because the commissioners did not secure the approval of the court and grand jury before making the levy. Second, that as no separate account was kept by the county treasurer of the moneys collected for road funds, but that the whole was treated as a common asset of the county and so reported by the county auditors each year that it has lost its identity as a road fund and has become part of the common fund of the county to be used for any county purposes.

"The first position I regard as wholly untenable. If it had any merit it could only be invoked by the taxpayers when the officer undertook to make the collection of the taxes. The money having been collected and paid into the county treasury, the legality or regularity of the levy and assessment cannot now be inquired into. Furthermore, I. think the proceeding was entirely regular. The commissioners were not bound to submit their plans, surveys, estimates, etc., before having a fund in their control, and it was perfectly proper for them to first secure a fund before asking the court for approval of certain roads, because the amount of money available was an important factor to be considered by the court and the grand jury in approving or disapproving the scheme presented by the county commissioners. And although the sections providing for the adoption of certain roads, the securing of the approval of the court and grand jury and the like, precede the section providing for the raising of the fund, yet the language of sec. 14 seems to imply that the first duty of the commissioners under this act is to levy and collect the taxes. The language being, 'the said .commissioners . . . . are hereby authorized to levy, assess and collect an annual tax of not more than two

mills upon the dollar . . . . for the purpose of acquiring and securing a fund from which to pay all costs . . . . under the provisions of the act.'

"The other question is more serious. Counsel for the county treasurer argue that this fund having been raised for a special purpose cannot be diverted to any other purpose, and cite in support of their position: Reed v. California Boro. School Dist., 17 Pa. Dist. Rep. 788; Connor's App., 103 Pa. 356; German Twp. School District v. Sangston, 74 Pa. 454; Mason v. Caffrey, 9 Kulp, 414; 37 Cyc. 325; ib. 1593; 27 Am. & Eng. Encyc. of Law, 867; ib. 915. As to this general principle there can be no doubt. The trouble confronting us here is the fact that this fund originated as early as 1905, was thrown into the general fund of the county each year thereafter, the last levy and assessment having been made in 1910, and the auditors for each of those years as well as the two succeeding years, when no further road fund was collected by the county, treated this fund as a general fund, available for all purposes, and these auditors' reports were unappealed from and no earmarks remained by which any portion of the fund can be recognized or designated as a road fund to be used for the special purpose for which it was collected. Another circumstance which is a very strong argument against the position taken by the respondent is the fact that we have now the third board of county commissioners and the third incumbent in the office of treasurer since this fund was acquired, and a significant fact that nine years have elapsed since the collection of a part of this fund and yet no public roads approved as county roads under the provisions of the act of assembly, and but one effort to obtain the approval of the grand jury, and that more than four years ago. What is to become of this fund if each succeeding grand jury upon application by the county commissioners refuses to lend its approval to any scheme submitted by the county officials? The county com-

missioners availing themselves of the information contained in the auditors' report for the year 1912 had a right to assume. that the balance reported was available for general purposes, and had a right in the levy of taxes, in the expenditure of money for improvements and the like, to act upon the theory that the balance reported by the county auditors was at their disposal for the benefit of the public. To say that the county auditors of the treasurer can now undo the work of the several boards of county auditors in the past would lead to interminable confusion and to very great hardships, with probably no beneficial results to anyone.

"The Act of April 15, 1834, sec. 37, P. L. 534, provides that the county treasurer shall keep account of the moneys received by him and his accounts shall be examined by the county commissioners and laid before the county auditors for settlement. And sec. 38 provides for the keeping of separate accounts by the treasurer of certain funds belonging to the commonwealth, but there is no act of assembly requiring the treasurer to keep separate accounts of special funds. This is a matter to be regulated by the practice of the officers of each county according to any system they may adopt, and while it would be prudent for the officials to keep separate accounts of funds like that in question here, yet if they choose not to preserve any methodical order or arrangement as the acquisition and distribution of special funds, but permit all funds to be commingled and go into a general fund, then I think it must be treated as being a fund available for general purposes of the county until otherwise applied by the officers themselves or by the court upon proper application. As a county treasurer cannot succeed himself in the office, and as it is shown here that we have the third incumbent in the office since this fund originated, it would be impossible at this late date to form a separate account of this fund. As shown by the auditors' report, there is less than one-half of the

amount collected for this special purpose now in the hands of the treasurer. Section 48 of the Act of April 15, 1834, P. L. 545, provides that the auditors 'shall audit, settle and adjust the accounts of the commissioners, treasurer, sheriff and coroner of the county and make reports thereof to the court of common pleas of such county together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner.' This report is to be filed among the records of the court of common pleas, and from it, sec. 56 permitted an appeal by the commonwealth, the county, or an officer surcharged; and by the Act of June 12, 1878, P. L. 208, ten or more taxpayers of the county are permitted to take an appeal in behalf of the county. No appeal being taken the report is conclusive upon all persons even though an error should appear on the face of the report: Hutchinson v. Com., 6 Pa. 124.

"The decision of this tribunal is also conclusive, and cannot be inquired into, either by the same tribunal at another time, or by a court of law, except in the manner provided, upon an appeal by the county or the officer. A long line of decisions has set this point at rest: Blackmore v. County of Allegheny, 51 Pa. 160. See also Northampton County v. Herman, 119 Pa. 373; Westmoreland County v. Fisher, 172 Pa. 317.

"But if the auditors who made the report may not review and alter it, much less may a subsequent board. One auditor is elected every year, and each year the board, as constituted by the fresh recruit, is to audit the accounts of officers for the year immediately preceding. This is the extent of their jurisdiction as defined by law, and no agreements of the commissioners can enlarge it. If the annual board may reopen the accounts of two years past, they may on the same principle go back twenty, and the next board may upset their doings, and thus interminable confusion be introduced in place of the statutory system: Northampton County v. Yohe, 24 Pa. 305.

"This same rule has been applied to township auditors.

"The auditors of 1831 had no authority, under the acts of assembly passed in this behalf, to examine and pass upon the plaintiff's claims. Their business was to examine and settle the accounts of the supervisors for the year which had just expired. The plaintiff's claims had been examined and adjusted by the auditors duly appointed for that purpose, in the years in which they accrued; and no board of auditors appointed for any subsequent year could take cognizance of them for any purpose, either for renewing or avoiding them: Leasure v. Mahoning Twp., 8 Watts, 551; Northumberland County v. Bloom, 3 W. & S. 542; Porter v. School Directors, 18 Pa. 144.

"True an appeal may be allowed nunc pro tunc upon an allegation of fraud: Zeigler's Petition, 207 Pa. 131; Fayette County Auditors, 30 Pa. C. C. Rep. 333. But in this case there is neither allegation of fraud nor an application for an appeal. In order to secure the benefit of the road fund under the act of 1895 the provisions of that act must be complied with: Middletown Road, 15 Pa. Superior Ct. 167; Gloman v. Finn, 15 Pa. Dist. Rep. 727; Lemoyne v. Washington County, 213 Pa. 123.

"Strictly speaking, the road fund remaining unexpended belongs to the taxpayers and should be refunded to them, and they are the only persons who have a right to complain of the failure to expend this money. But they are not complaining; they are not asking for a return of the fund, and if they were, the long time that has been permitted to elapse since payment of the money, and the several auditors' reports confirming the county's right to the fund, would be an insuperable barrier to their claim. What then becomes of the fund?

"In Field v. Stroube, 103 Ky. 114, and Whaley v. Com., 110 Ky. 154, cited by petitioner's counsel, it is held that a surplus fund remaining after the purpose for which a particular levy was made has been accom-

plished may be appropriated by the county for general purposes. In this case the auditors' report of 1914 at most treats the fund as constituting a debt which the county owes, and if this be true, it cannot be said to have superior merit to other claims against the county, and therefore it must be treated in the light of the auditors' report as a common debt, and its payment enforced in the same way. Should there be a desire for public roads under the act of 1895 and as amended by the act of 1905, the court upon petition of the commissioners or of taxpayers would have authority to provide by a special order for the application of funds out of the common funds of the county to pay for such roads.

"In this case the treasurer seems to have acted in good faith, and upon the belief that the report of the county auditors prevented the payment of the order issued by the county commissioners, and therefore I do not think he ought to be made personally to pay the costs, and I enter the following decree:

"And now, June 10, 1914, this cause came on to be heard and was argued by counsel, whereupon, upon due consideration it is ordered, adjudged and decreed that the defendants' return to the alternative writ of mandamus heretofore issued was held insufficient; and it is further ordered, adjudged and decreed that a peremptory writ of mandamus be issued—the costs of this proceeding to be paid by the county of Greene."

*Error assigned* was the order of the court, quoting it.

*F. W. Downey,* with him *J. R. Scott,* for appellant.—The road funds cannot be diverted to general purposes: German Twp. School Dist. v. Sangston, 74 Pa. 454.

The treasurer must not pay out moneys for any other purpose than that for which such moneys have been collected, whether such moneys were in his hands generally or not: Bechtel v. Fry, 217 Pa. 591; Com. ex rel.

v. Moore, 20 Pa. Dist. Rep. 147; Loucks v. Thompson, 11 Pa. Dist. Rep. 563; Com. v. Philadelphia County Commissioners, 2 Wharton, 286.

Burden is upon plaintiffs to show a clear legal right in themselves and a corresponding duty upon the defendant: Com. ex rel. v. Kessler, 222 Pa. 32; Mercur v. Media Electric Light, etc., Co., 19 Pa. Superior Ct. 519; James v. Bucks County Commissioners, 13 Pa. 72.

*Chas. H. King*, for appellees.—The road fund by reason of the county auditor's reports, lost its identity and became so mingled with the general or current expense fund that it has become in effect a general or current expense fund: Westmoreland County v. Fisher, 172 Pa. 317; Schuylkill County v. Boyer, 125 Pa. 226; Northampton County v. Herman, 119 Pa. 373; Blackmore v. Allegheny County, 51 Pa. 160; Fayette County Auditors, 30 Pa. C. C. Rep. 333; Zeigler's Petition, 207 Pa. 131.

OPINION BY ORLADY, J., May 14, 1915:

The validity of the decree entered by the court below depends upon the answer to the single question,—were the funds in the county treasury applicable to the payment of the order issued against them by the county commissioners? If this order is valid the treasurer is fully protected in paying it, and the complications in the county funds that were created by former officials cannot be charged against his official administration. The taxes collected by virtue of the Acts of June 26, 1895, P. L. 336, and May 11, 1909, P. L. 506, for the purpose of securing a fund to be applied in locating, opening, widening, etc., roads and highways, were intended by the legislature to be used and expended for the purposes indicated in the statutes, and there was the special prohibition that they were not to be used or expended for any other purpose than the ones named.

We have no doubt of the right of the comissioners to levy and collect the taxes in question. The trouble is caused by the management of the. county affairs by its former officials, who ignored the plain mandate of the statutes for so long a time, and mingled its special funds in such an unauthorized manner that it is not now possible to separate them into a proper schedule. The inexcusable mistakes in handling this special fund were committed by officials who are now beyond legal liability. The tax raised in 1905 was $12,022.75,—in 1906, $12,022.58,—in 1907, $16,871.23,—in 1908, $16,886.98,— in 1909, $16,917.87, and in 1910, $40,240.75. Each of these sums was treated by the county commissioners, county treasurers and county auditors as general, and not special funds, and they were mingled with the other county funds in such a way that the road fund— as a special fund—was ignored and its identity is now lost.

From 1906 to 1913, inclusive, this system of payment and audit was followed, though no road tax has been collected since 1910. The aggregate of the road fund was $114,826.95, which was subjected to a proper credit of but $135.21, and the balance of that fund was treated as available for general purposes, and was so used. It is not possible at this late date to fix any amount of the present funds, as having been collected in any year as the road tax raised and unexpended as a special tax fund. Nine years have passed since a part of this road tax was collected, the finances of the county have been administered during that period by three separate several boards of commissioners, three county treasurers have disbursed the general funds of the county, three boards of county auditors have approved the disbursements as made, and all the. accounts and audits have been settled by formal order of the court. No appeal was taken from any of these audits, which when duly confirmed became conclusive of the matters therein contained on all parties.

But one attempt was made to apply the road fund to the purpose for which it was intended by the statutes, and that failed more than four years ago.

The last auditors' report shows that on January 5, 1914, there was but $53,682.51 of every kind of fund in the county treasury, and as stated above, no road tax has been collected since 1910, so that there is now no way of identifying any part of the present funds as belonging to, or coming from a road tax levied and collected in any of the years from 1905 to 1910, inclusive.

The road tax fund having lost its identity, it cannot now be treated as a special road tax fund. It would be unwarranted in law or equity to hold the present county treasurer responsible for the errors or blunders of county officials which were committed during administrations of which he was not a part, and in which he had no voice in controlling its management.

The exhaustive opinion of RUPPLE, J. (S. P.), so clearly demonstrates the conclusion he reached, that it is not necessary to add further to it.

The decree is affirmed.